[No. B015417. Second Dist., Div. Four. Mar. 19, 1986.]

BEVERLY GLEN MUSIC, INC., Plaintiff and Appellant, v.
WARNER COMMUNICATIONS, INC., et al.,
Defendants and Respondents.

**COUNSEL**

Ronald N. Wilson, Jonathan R. Ivy and Wilson & Becks for Plaintiff and Appellant.

Lary Alan Rappaport, Bert H. Deixler, George R. McCambridge, Shinaan S. Krakowsky, Ginna Ingram and McCambridge & Deixler for Defendants and Respondents.

**OPINION**

**KINGSLEY, Acting P. J.**—The plaintiff appeals from an order denying a preliminary injunction against the defendant, Warner Communications, Inc. We affirm.

### FACTS

In 1982, plaintiff Beverly Glen Music, Inc., signed to a contract a then-unknown singer, Anita Baker. Ms. Baker recorded an album for Beverly Glen which was moderately successful, grossing over $1 million. In 1984, however, Ms. Baker was offered a considerably better deal by defendant

Warner Communications. As she was having some difficulties with Beverly Glen, she accepted Warner's offer and notified plaintiff that she was no longer willing to perform under the contract. Beverly Glen then sued Ms. Baker and sought to have her enjoined from performing for any other recording studio. The injunction was denied, however, as, under Civil Code section 3423, subdivision Fifth, California courts will not enjoin the breach of a personal service contract unless the service is unique in nature and the performer is guaranteed annual compensation of at least $6,000, which Ms. Baker was not.

Following this ruling, the plaintiff voluntarily dismissed the action against Ms. Baker. Plaintiff, however, then sued Warner Communications for inducing Ms. Baker to breach her contract and moved the court for an injunction against Warner to prevent it from employing her. This injunction, too, was denied, the trial court reasoning that what one was forbidden by statute to do directly, one could not accomplish through the back door. It is from this ruling that the plaintiff appeals.

## Discussion

From what we can tell, this is a case of first impression in California. While there are numerous cases on the general inability of an employer to enjoin his former employee from performing services somewhere else, apparently no one has previously thought of enjoining the new employer from accepting the services of the breaching employee. While we commend the plaintiff for its resourcefulness in this regard, we concur in the trial court's interpretation of the maneuver.

■ "It is a familiar rule that a contract to render personal services cannot be specifically enforced." (*Foxx* v. *Williams* (1966) 244 Cal.App.2d 223, 235 [52 Cal.Rptr. 896].) An unwilling employee cannot be compelled to continue to provide services to his employer either by ordering specific performance of his contract, or by injunction. To do so runs afoul of the Thirteenth Amendment's prohibition against involuntary servitude. (*Poultry Producers etc.* v. *Barlow* (1922) 189 Cal.278, 288 [208 P. 93].) However, beginning with the English case of *Lumley* v. *Wagner* (1852) 42 Eng. Rep. 687, courts have recognized that, while they cannot directly enforce an affirmative promise (in the *Lumley* case, Miss Wagner's promise to perform at the plaintiff's opera house), they can enforce the negative promise implied therein (that the defendant would not perform for someone else that evening). Thus, while it is not possible to compel a defendant to perform his duties under a personal service contract, it is possible to prevent him from employing his talents anywhere else. The net effect is to pressure the defendant to return voluntarily to his employer by denying him the means

of earning a living. Indeed, this is its only purpose, for, unless the defendant relents and honors the contract, the plaintiff gains nothing from having brought the injunction.

The California Legislature, however, did not adopt this principle when in 1872 it enacted Civil Code section 3423, subdivision Fifth, and Code of Civil Procedure section 526, subdivision 5. These sections both provided that an injunction could not be granted: "To prevent the breach of a contract the performance of which would not be specifically enforced." In 1919, however, these sections were amended, creating an exception for: "a contract in writing for the rendition or furnishing of personal services from one to another where the minimum compensation for such service is at the rate of not less than six thousand dollars per annum and where the promised service is of a special, unique, unusual, extraordinary or intellectual character. . . ."

█ The plaintiff has already unsuccessfully argued before the trial court that Ms. Baker falls within this exception. It has chosen not to appeal that judgment, and is therefore barred from questioning that determination now. The sole issue before us then is whether plaintiff—although prohibited from enjoining Ms. Baker from performing herself—can seek to enjoin all those who might employ her and prevent them from doing so, thus achieving the same effect.

We rule that plaintiff cannot. Whether plaintiff proceeds against Ms. Baker directly or against those who might employ her, the intent is the same: to deprive Ms. Baker of her livelihood and thereby pressure her to return to plaintiff's employ. Plaintiff contends that this is not an action against Ms. Baker but merely an equitable claim against Warner to deprive it of the wrongful benefits it gained when it "stole" Ms. Baker away. Thus, plaintiff contends, the equities lie not between the plaintiff and Ms. Baker, but between plaintiff and the predatory Warner Communications company. Yet if Warner's behavior has actually been predatory, plaintiff has an adequate remedy by way of damages. An injunction adds nothing to plaintiff's recovery from Warner except to coerce Ms. Baker to honor her contract. Denying someone his livelihood is a harsh remedy. The Legislature has forbidden it but for one exception. To expand this remedy so that it could be used in virtually all breaches of a personal service contract is to ignore over 100 years of common law on this issue. We therefore decline to reverse the order.

The order is affirmed.

McClosky, J., and Arguelles, J., concurred.