**SIMS SNOWBOARDS, INC., a California corporation, Plaintiff–Appellee,**

v.

**Craig KELLY and the Burton Corp., a Vermont corporation dba Burton Snowboards, Defendants–Appellants.**

**No. 88–3591.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1988.

Decided Dec. 6, 1988.

---

Michael G. Hanlon, Portland, Or., J.W. Jeff Karford II, Peter A. Kalat, Curtis, Mallet–Prevost, Colt & Mosle, New York City, for defendants-appellants.

Roger L. Meyer, Meyer, Habernigg & Wyse, Portland, Or., for plaintiff-appellee.

Before BROWNING, TANG and FARRIS, Circuit Judges.

FARRIS, Circuit Judge:

I.

Craig Kelly and Burton Snowboards, defendants-appellants, appeal the district court's grant of a preliminary injunction to Sims Snowboards, plaintiff-appellee. The injunction prevents Kelly from using or endorsing any snowboard other than a Sims or an unidentified snowboard and from using or endorsing accessory products identified as Burton products. We reverse and vacate the injunction.

II.

Our review of an order granting a preliminary injunction is limited to determining whether the order is an abuse of discretion, or based on clearly erroneous findings of fact or on an erroneous legal standard. *Portland Feminist Women's Health Center v. Buhler*, 859 F.2d 681, 684 (9th Cir.1988); *Chalk v. United States District Court*, 840 F.2d 701, 704 (9th Cir. 1988). We review a district court determination of the state law underlying a preliminary injunction de novo. *Trans Meridian Trading Inc. v. Empresa Nacional de Comercializacion de Insumos*, 829 F.2d 949, 953 (9th Cir.1987); *In re McLinn*, 739 F.2d 1395, 1397–1403 (9th Cir.1984) (en banc). A district court's determination of the appropriate choice of law is reviewed de novo. *Pereira v. Utah Transport, Inc.*, 764 F.2d 686, 689 (9th Cir.1985), *cert. dismissed*, 475 U.S. 1040, 106 S.Ct. 1253, 89 L.Ed.2d 362 (1986). We review the district court's application of the facts to determine the appropriate choice of law de novo be-

cause the district court's determination of choice of law are not in dispute. *See United States v. McConney,* 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### III.

### A.

■ In a diversity case, a federal court must apply the choice of law rules of the state in which the action was filed. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Trans Meridian,* 829 F.2d at 953. Determining which state's law applies in this case matters because California law differs from Oregon law in one important respect. California law would bar the granting of an injunction against Kelly or Burton.

> An injunction can not be granted: ... Fifth—To prevent the breach of a contract, other than a contract in writing for the rendition or furnishing of personal services from one to another where the minimum compensation for such service is at the rate of not less than six thousand dollars per annum and where the promised service is of a special, unique, unusual, extraordinary or intellectual character, which gives it peculiar value the loss of which can not be reasonably or adequately compensated in damages in an action at law, the performance of which would not be specifically enforced;
> ...

Cal.Civ.Code § 3423. The statute provides that unless a personal service contract (i.e., a contract whose performance would not be specifically enforced) guarantees payments of at least six thousand dollars yearly, which Kelly's contract does not, no injunction may be granted to prevent a breach of the contract. *See Motown Record Corp. v. Brockert,* 160 Cal.App.3d 123, 207 Cal. Rptr. 574 (1984). The statute has been interpreted to bar enjoining the prospective employer in a tort suit as well. *Beverly Glen Music, Inc. v. Warner Communica-*

*tions, Inc.,* 178 Cal.App.3d 1142, 224 Cal. Rptr. 260 (1986).

■ As the forum state, Oregon will apply its own law if the issue is one that is "procedural"—concerned with judicial administration, such as the methods of presenting facts to a court or the way a jury operates. *See Equitable Life Assurance Soc'y v. McKay,* 861 F.2d 221, 222 (9th Cir.1988); *Equitable Life Assurance Soc'y v. McKay,* 306 Or. 493, 760 P.2d 871, 873 (1988) (en banc) (determining Washington Deadman's Statute to be procedural). If the issue is "substantive"—concerned with the legal rights of the parties—then a choice of law analysis must be made. *See McKay,* 760 P.2d at 873–74; *Lilienthal v. Kaufman,* 239 Or. 1, 395 P.2d 543, 545 (1964) (en banc) (validity of contract matter of substance). Oregon has not decided whether an injunction is a procedural tool that should be governed by its law as the forum state. We find that the availability of the California anti-injunction statute would not be considered "procedural" by the Oregon courts, because it affects the substantive rights of the parties and not merely the methodology of litigation. *See Seattle–First National Bank v. Schriber,* 51 Or.App. 441, 625 P.2d 1370, 1372–74 (1981) (finding award of attorney's fees to be substantive issue); *see also* Leflar, McDougal & Felix, *American Conflicts Law* 346–48 (1986) (measure of damages is substantive issue).

■ Because the California anti-injunctive statute is applicable, a choice of law analysis must be made. The initial step is to determine whether either state has a substantial interest in having its law applied. *See Lilienthal,* 395 P.2d at 547–48; *Tower v. Schwabe,* 284 Or. 105, 585 P.2d 662, 663 (1978). In the absence of a significant interest by more than one state, the law of the only state with a substantial interest is applied. *Tower,* 585 P.2d at 663; *Schriber,* 625 P.2d at 1373–74. Oregon does not have a significant interest. None of the parties is an Oregon citizen. Kelly's shift of residence does not affect that determination. "The defendant moved to Oregon after the transaction. The fortuity of

defendants' later acquired residence in Oregon does not provide a reason for imposing Oregon's public policy." *Schriber*, 625 P.2d at 1374.

California has an interest in having its anti-injunction statute applied. The statute represents an important expression of California public policy. California seeks to enhance the rights of performers by sharply limiting the right their employers would otherwise have to stop the performer from working for a new employer. *See Beverly Glen Music*, 224 Cal.Rptr. at 261, *Motown*, 207 Cal.Rptr. at 583–85; *see also* Note, *Statutory Minimum Compensation and the Granting of Injunctive Relief to Enforce Personal Service Contracts in the Entertainment Industries: The Need for Legislative Reform*, 52 S.Cal.L.Rev. 489 (1979). Because of the substantive importance of the anti-injunction provision, Oregon courts should respect it. *Cf. Tower*, 585 P.2d at 664 (finding interest of British Columbia, where accident occurred, to be minimal in comparison with interest of Oregon, where both parties resided). Although Kelly is not a California resident, Sims Snowboards is a California corporation. California would not want to create an incentive for resident corporations to employ non-residents or use foreign courts. California has an interest in preventing its employers from exploiting employees.

Although substantial parts of the contract negotiations and performance occurred elsewhere, California has the most significant relationship to the parties and transaction. *See Citizens First Bank v. Intercontinental Express, Inc.*, 77 Or.App. 655, 713 P.2d 1097, 1098–99 (1986); *Restatement (Second) Conflict of Law* § 188(3) (cited in *Schriber*, 625 P.2d at 1372 n. 6). The contract was drafted, signed, and performed in California by Sims Snowboards, which is headquartered in that state. Oregon has little or no relationship to the contract, because it was not drafted, signed, or performed in Oregon and neither party is an Oregon citizen.

### B.

The district court determined that even if the California anti-injunction statute were applicable, Fed.R.Civ.P. 65 allowed temporary injunctive relief to be granted. Although the question is a close one, we disagree. Rule 65 merely sets forth the procedural terms for the issuance of injunctions and restraining orders and does not itself authorize injunctive relief. 7(2) *Moore's Federal Practice* ¶ 65.04[1] at 65–31 (1987). That authority derives from the traditional equitable power of federal courts in cases of irreparable injury. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975) (describing standard); *Ohio Oil Co. v. Conway*, 279 U.S. 813, 815, 49 S.Ct. 256, 256, 73 L.Ed. 972 (1929) (same). We must decide whether this equitable power enables a federal court applying California law to issue an injunction when a California court would be constrained by the anti-injunction statute.

This is not a case where a direct conflict exists between the federal rule of procedure and state law. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 750–51, 100 S.Ct. 1978, 1985–86, 64 L.Ed.2d 659 (1980) (Fed.R.Civ.P. 3 does not automatically supercede state limitations statute); *cf. Hanna v. Plumer*, 380 U.S. 460, 470–71, 85 S.Ct. 1136, 1143–44, 14 L.Ed.2d 8 (1965) (Fed.R.Civ.P. 4(d)(1) controls service of process in diversity actions). The California anti-injunction statute expressly prohibits the issuance of injunctions in this type of contract dispute. It does not directly conflict with Rule 65 because the rule does not state that injunctive relief is available in any particular case. Rule 65 merely sets out the procedural requirements for injunctions and restraining orders.

Because no direct conflict with Rule 65 exists, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires the application of state law over federal law if the state law is outcome-determinative. *Guaranty Trust Co. v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945); *see also Hanna*, 380 U.S. at 468–73, 85 S.Ct. at 1142–45. Although the district court correctly noted that the availability of preliminary injunctive relief would not determine the final outcome on the merits, the outcome-determinative test is not so narrow.

[S]ince a federal court adjudicating a State-created right solely because of the diversity of citizenship is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.... [T]he intent of [the *Erie* ] decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies *Erie R. Co. v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result.

*Guaranty Trust*, 326 U.S. at 108–09, 65 S.Ct. at 1469–70; *see also Sun Oil Co. v. Wortman*, —— U.S. ——, 108 S.Ct. 2117, 2124, 100 L.Ed.2d 743 (1988) (thrust of *Erie* is to ensure substantial uniformity of outcome between cases tried in federal and state courts); Leflar, *supra*, at 64–65. Here, the outcome is in large part determined at the preliminary injunction stage. If Kelly is enjoined from competing for Burton, Sims has accomplished what California has prohibited—the enforcement of a personal service contract. The California policy should be respected by federal courts sitting in diversity.

 We recognize that federal courts analyzing the availability of preliminary injunctions in similar cases have come to contradictory conclusions. *Compare Franke v. Wiltscheck*, 209 F.2d 493, 496–97 (2d Cir.1953); *Kaiser Trading Co. v. Associated Metals & Minerals Corp.*, 321 F.Supp. 923, 931 n. 14 (N.D.Cal.1970), *appeal dismissed*, 443 F.2d 1364 (9th Cir. 1971) (availability of preliminary injunction, because of substantive importance, determined by state law); 2 *Moore's Federal Practice* ¶ 2.09 at 2–57, 7(2) *id.* ¶ 65.18[1] (policy argument for treating availability of injunction as substantive) *with Federal*

*Leasing, Inc. v. Underwriters at Lloyd's*, 487 F.Supp. 1248, 1260 (D.Md.1980), *aff'd* 650 F.2d 495 (4th Cir.1981); *Martin v. Reynolds Metals Co.*, 224 F.Supp. 978, 982 (D.Or.1963), *aff'd on other grounds*, 337 F.2d 780 (9th Cir.1964) (finding injunction available under federal law independent of underlying state substantive law); 11 Wright & Miller, *Federal Practice and Procedure* § 2943 at 390–391 (1973) (supporting treating availability of injunctive relief as procedural). However, we hold that the California anti-injunction statute should be followed in this diversity case. The general equitable powers of federal courts should not enable a party suing in diversity to obtain an injunction if state law clearly rejects the availability of that remedy.

### IV.

Although our choice of law analysis will control further proceedings in this case, we did not review the underlying merits of the plaintiff's contract and tort claims. The injunction is vacated.

REVERSED and REMANDED.