8 F.3d 26
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
DANIEL INDUSTRIES, INC., a Delaware corporation, Plaintiff-Appellee,
v.
BARBER-COLMAN CO., a Delaware corporation, and B-C
Investment Co., an Illinois corporation,
Defendants-Appellants.
 No. 92-55462.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 5, 1993.
Decided Sept. 17, 1993.
 
 Before: BROWNING, FARRIS and KELLY*, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 Background
 
 2
 In 1986, Daniel Industries and the Barber-Colman Company entered into a contract for the sale of stock of a California corporation. The agreement was negotiated and executed in Texas and contained a Texas choice-of-law provision. At the time of the agreement, Daniel was registered and headquartered in Texas, and Barber-Colman was registered in Delaware and headquartered in Illinois.
 
 
 3
 The underlying litigation stems from the financial failure of the California corporation and a suit brought by employees of that corporation against Daniel. Daniel sued Barber-Colman for breach of contract, but was unsuccessful. Barber-Colman now seeks attorneys' fees. The contract provided for the recovery of fees by Daniel only. California law requires reciprocity of attorney fee provisions in contracts, Cal.Civ.Code § 1717, while Texas law contains no such requirement. Hence, choice of law dictates whether Barber-Colman is entitled to fees.
 
 
 4
 Prior to trial, the parties agreed that there were no conflicts between Texas and California law on issues critical to the underlying litigation and chose to proceed under California law. However, no formal stipulation was entered, and no conflicts of law arose during the trial. When the fee issue arose after trial, the district court agreed with Daniel that Texas law governed and denied Barber-Colman's fee request. The court found that Texas has a substantial relationship to the agreement, that the reliance on California law at trial does not preclude application of Texas law to the fee issue, and that Daniel did not waive nor is it estopped from asserting Texas law.
 
 
 5
 Barber-Colman now raises the following issues for our review: (1) Is Daniel barred from invoking Texas law by the principles of consent, waiver or estoppel? (2) Does the application of California law to substantive contract issues at trial require that California law govern the post-trial fee issue? (3) Do California choice-of-law principles require application of California law to the fee issue?
 
 Discussion
 I. Standard of Review
 
 6
 Attorneys' fees awards are generally reviewed for abuse of discretion, but whether a district court applied the correct legal standard to the fee request is reviewed de novo. United States v. Callahan, 884 F.2d 1180, 1184-85 (9th Cir.1989) cert. denied, 493 U.S. 1094 (1990). A district court's determination of the appropriate choice of law is reviewed de novo. Sims Snowboards, Inc. v. Kelly, 863 F.2d 643, 644 (9th Cir.1988). A district court's determination of consent, waiver or estoppel is usually a factual finding, which we will uphold unless clearly erroneous. Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1096 (9th Cir.1985); CBS, Inc. v. Merrick, 716 F.2d 1292, 1295 (9th Cir.1983).
 
 II. Consent, Waiver or Estoppel
 
 7
 The district court found that, although Daniel acquiesced in the use of California law for some purposes, it did not stipulate to the application of California law for all purposes, or for the specific purpose of construing the attorneys' fees provision. The record supports this finding, and the district court's ruling is not clearly erroneous. See E.R. 153-54, 160-62, 167-68, 173-74.
 
 
 8
 The district court also found that Daniel had not waived and was not estopped from asserting Texas law. "Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." CBS, Inc., 716 F.2d at 1295. Daniel must have made a "clear expression of its intent" to waive Texas law. Davies v. Grossmont Union High School Dist., 930 F.2d 1390, 1395 (9th Cir. 1991). Daniel's statements were not completely clear, but indicate an intent to preserve the Texas law argument, precluding a finding of waiver. See Bechtel v. Liberty Nat'l Bank, 534 F.2d 1335, 1340 (9th Cir. 1976).
 
 
 9
 For Barber-Colman to claim estoppel, it must have reasonably relied on Daniel's statements or conduct and changed its position for the worse. Ellenburg, 763 F.2d at 1096; Heckler v. Community Health Serv., 467 U.S. 51, 59 (1984). The district court found that Barber-Colman's reliance was unreasonable, because Daniel did not stipulate or specifically agree to the application of California law to the fee issue. As Barber-Colman stated in a pretrial brief, it was proceeding "on the assumption (and hope) that Daniel does not raise Texas law at this late date." E.R. 66 N.1. Hope does not justify reliance, and the district court did not err in its finding.
 
 III. Raising Choice of Law Issue Post Trial
 
 10
 Barber-Colman next argues that California law must be used because it was applied to the other substantive issues at trial. As Daniel points out, however, the critical factor is whether the district court engaged in a choice of law analysis once a conflict was raised. It is irrelevant that the conflict arose post trial. Since no conflict arose prior to the fee issue, no conflicts analysis was employed. The parties' informal agreement to use California law does not determine the appropriate choice of law in the event of a dispute. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497-98 (1941) (Court remanded for application of state conflicts principles instead of merely adopting law applied during trial); Alaska Airlines, Inc. v. United Airlines, Inc., 902 F.2d 1400, 1402-05 (9th Cir. 1990), appeal dismissed as moot, 1990 WL 288714 (9th Cir. Dec. 20, 1990), 932 F.2d 1571 (9th Cir. 1991); Hess Oil Virgin Islands Corp. v. UOP, Inc., 861 F.2d 1197, 1210-11 (10th Cir. 1988). The district court correctly applied a choice of law analysis when the conflict arose.
 
 IV. California Conflict of Laws Principles
 
 11
 Federal courts apply the forum state's conflict of laws principles when adjudicating pendent claims. Klaxon, 313 U.S. at 496. Under California law, contractual choice-of-law provisions are upheld unless the transaction falls under either of the exceptions contained in the Restatement (Second) of Conflict of Laws § 187 (1971). Nedlloyd Lines B.V. v. Superior Court, 834 P.2d 1148, 1151-52 (Cal. 1992). The Restatement provides:
 
 
 12
 The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
 
 
 13
 (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
 
 
 14
 (b) application of the law of the chosen state would be contrary to a fundemental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
 
 
 15
 Restatement (Second) of Conflict of Laws, § 187(2) (1971).[1]
 
 
 16
 The proper approach under section 187 is for the court first to determine whether: (1) the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law. Nedlloyd Lines, 834 P.2d at 1152. If either test is met, the court must next determine whether the chosen state's law is contrary to a fundamental policy of California. Id. If there is a conflict, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue . . . .' " Id. (quoting Restatement § 187 (2)). The choice of law will not be enforced if California has a materially greater interest. Id.
 
 1. Substantial Relationship
 
 17
 The district court found that Texas has a substantial relationship to the parties and the transaction. Texas was the place of partial negotiation, execution, and at least partial performance. Daniel is based in Texas and at that time was incorporated in Texas. Generally, the residence of one of the parties in the chosen state is a reasonable basis for their choice. Consul Ltd. v. Solide Enter., Inc., 802 F.2d 1143, 1147 (9th Cir. 1986) (citing Restatement § 187 cmt. f).
 
 2. Conflict with Policy of California
 
 18
 Texas law does conflict with a fundamental policy of California. California law requiring mutuality of attorneys' fees provisions reflects a strong public policy, overriding another strong public policy of freedom of contract. Cal. Civ. Code § 1717; Harbor View Hills Community Ass'n. v. Torley, 5 Cal.App.4th 343, 348, 7 Cal.Rptr.2d 96 (1992). The policy was enacted to protect California litigants from one-sided fee provisions, particularly in contracts of adhesion. See Reynolds Metals Co. v. Alperson, 599 P.2d 83, 85 (Cal. 1979).
 
 3. Materially Greater Interest
 
 19
 The district court found that both states have some degree of interest. California has an interest in protecting litigants, particularly California residents, against one-way fee provisions by parties with superior bargaining power. Texas has an interest in enforcing the reasonable expectations of the contracting parties, particularly where one of the parties is based in Texas. As neither of these parties are based in California, and since they possessed roughly equal bargaining power in negotiating the agreement, the court found that California did not have a "materially greater interest." E.R. at 239.
 
 
 20
 Barber-Colman argues that California clearly has a fundamental policy interest in this issue, while Texas does not, because Texas has no policy encouraging one-sided fee agreements. However, Texas does have a findamental interest in regulating business activity within its borders and in enforcing contracts of Texas residents. See Liew v. Official Receiver and Liquidator, 685 F.2d 1192, 1198 (9th Cir. 1982).
 
 
 21
 Barber-Colman also argues that the residence of the parties should not be dispositive, because the plaintiff-employees in the underlying litigation were California residents, and if they had appealed then the statute would apply to them. The residence of the parties is important, though, because California's policies are intended to protect only California residents. See North American Asbestos Corp. v. Superior Court, 180 Cal.App.3d 902, 907, 225 Cal.Rptr. 877, 880 (1986) ("California has a strong interest in permitting its residents to seek compensation for injuries . . . ."); Fuller v. Greenup, 267 Cal.App.2d 10, 18, 72 Cal.Rptr. 531, 537 (1968) ("The state . . . of the place of the wrong has little or no interest in seeing that a person is compensated for such wrong when none of the parties reside there.").
 
 
 22
 This circuit has previously held that California public policy will not be applied to parties having no substantial contact with the state. S.A. Empresa v. Boeing Co., 641 F.2d 746, 752 (9th Cir. 1981). Although the sale property was located in California, the residence of the parties is of primary importance for purposes of the reciprocal fee statute. Neither of the parties are residents of California, Texas law was chosen by the parties, and properly applied by the district court.
 
 
 23
 AFFIRMED.
 
 
 
 *
 Honorable Paul J. Kelly, Jr., Circuit Judge for the United States Court of Appeals for the Tenth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 188 of the Restatement provides that, in the absence of choice of law by the contracting parties, the parties will be governed by the law of the state with the most significant relationship to the transaction and parties, as determined by:
 (a) the place of contracting,
 (b) the place of negotiation of the contract,
 (c) the place of performance,
 (d) the location of the subject matter of the contract, and
 (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
 These contracts are to be evaluated according to their relative importance with respect to the particular issue.