Linda KILDARE; Jonean Daniel; Tyrone Bozman; Edgar Copeland; Donald Furr; Christopher Boyko; Harvey Winfield, Plaintiffs–Appellants,

v.

Rita SAENZ; Donna Mandelstam; Jo Anne B. Barnhart, Commissioner; Linda McMahon; Pete Spencer; Diane Trewin, Defendants–Appellees.

No. 01–17464.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 2003.

Filed March 24, 2003.

Robert E. Borton, Heller, Ehrman, White, & McAuliffe, LLP, San Francisco, CA, for the plaintiffs-appellants.

Christine N. Kohl, U.S. Department of Justice, Civil Division, Washington, DC, for the defendants-appellees.

Douglas M. Press, Deputy Attorney General, San Francisco, CA, for the defendants-appellees.

Donald B. Verrilli, Jr. and Olivier A. Sylvain, Jenner & Block, LLC, Washington, DC, for amicus curiae National Law Center on Homelessness and Poverty.

nia; Saundra B. Armstrong, District Judge, Presiding. D.C. No. CV–00–04732–SBA.

Before TROTT, RYMER, and TALLMAN, Circuit Judges.

## OPINION

TROTT, Circuit Judge.

Linda Kildare ("Kildare"), Jonean Daniel ("Daniel"), Tyrone Bozman ("Bozman"), Edgar Copeland ("Copeland"), Donald Furr ("Furr"), Christopher Boyko ("Boyko") and Harvey Winfield ("Winfield"), (collectively "Appellants"), appeal the district court's dismissal of their class action suit alleging that California state officials systematically disregard federal regulations when they initially evaluate applications for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI"), and that the Social Security Administration ("SSA") fails to exercise adequate oversight over the state officials. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

Appellants filed this action in the district court on behalf of themselves and others similarly situated against two sets of defendants acting in their official capacities: (1) the United States Commissioner ("Commissioner"), Regional Commissioner, Assistant Regional Commissioner of the SSA, and the Manager for the Center for Disability of the SSA, (collectively "Federal Defendants"); and (2) the Director of the California Department of Social Services and the Deputy Director of its Disability Adult Programs Division ("DAPD"), (collectively "State Defendants").

### A.

### Statutory and Regulatory Framework

The federal government provides disability benefits under two programs administered by the SSA. *Bowen v. City of New York*, 476 U.S. 467, 469–70, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). Title II (SSDI) of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.*, provides benefits to persons with mental or physical disabilities, and Title XVI (SSI) of the Act, 42 U.S.C. §§ 1381 *et seq.*, provides benefits to indigent persons with disabilities. State agencies, acting under the authority of the Commissioner, make the initial determination of whether an individual is disabled for purposes of receiving SSDI/SSI benefits. *City of New York*, 476 U.S. at 470, 106 S.Ct. 2022.

Federal regulations ("regulations") prescribe a five-step "sequential evaluation" for making the SSDI/SSI disability determination. 20 C.F.R. §§ 404.1520, 416.920; *City of New York*, 476 U.S. at 470, 106 S.Ct. 2022 (citations omitted). The regulations have detailed rules and standards for state agencies to use in obtaining medical evidence for the initial disability determination. 20 C.F.R. pts. 404, 416. For example, the regulations require state agencies to develop each claimant's complete medical history and make "every reasonable effort" to obtain medical evidence from the claimant's own medical sources. 20 C.F.R. §§ 404.1512(d), 416.912(d). The regulations also contain detailed guidelines on the use of Consultative Examinations ("CEs"), which are physical or mental examinations requested and purchased by state agencies after determining that additional medical evidence is necessary. 20 C.F.R. §§ 404.1519, 404.1519a, 404.1519b, 416.919, 416.919a, 416.919b.

Claimants may employ a three-step administrative review process if the state agency determines they are not disabled. 20 C.F.R. pt. 404, supt. J; pt. 416, supt. N. Upon completion of the administrative review process, claimants may seek judi-

cial review in federal district court pursuant to 42 U.S.C. § 405(g).[1]

## B.

### Appellants' General and Specific Allegations

Appellants, a group of individuals with disabilities who were initially denied SSDI and SSI benefits, allege that the State Defendants systematically disregard regulations governing the evaluation of medical evidence for approval of SSDI/ SSI claims. Generally, Appellants claim that the State Defendants systematically fail to develop claimants' medical records as required by the regulations, give insufficient weight to claimants' own medical records, improperly make disability determinations on the basis of CEs that frequently fail to meet federal standards, and issue denial of benefits letters without sufficient explanation for denial. Appellants also claim that the Federal Defendants fail to adequately oversee the State Defendants.

Appellants' specific allegations, however, reveal claims that the State Defendants committed a host of individual errors in making initial disability determinations that vary with each Appellant, rather than a policy of systematically disregarding the regulations. The specific allegations can be divided into nine categories: (1) that DAPD did not adequately or completely develop the claimant's medical history (Kildare, Daniel, Boyko), (2) that DAPD's denial of benefits letters did not give a sufficient explanation for their denial (Kildare); (3) that DAPD did not give proper weight to certain medical reports (Daniel, Bozman); (4) that DAPD did not properly consider the relationship between a claimant's various disabilities (Daniel); (5) that DAPD requested CEs in contravention of the regulations, such as requesting CEs on the same or following day as the application (Kildare, Copeland, Furr, Winfield); (6) that the CEs failed to include an explanation or discuss the evidence for their conclusion (Bozman, Furr); (7) that DAPD performed an inadequate analysis and/or did not draw its conclusions from the facts (Bozman, Copeland); (8) that DAPD failed to explain inconsistencies between two medical reports that were admittedly in conflict (Furr, Boyko); and (9) that DAPD drew a conclusion that conflicted with certain reports and opinions without further explanation (Copeland, Winfield). Appellants also allege specific injuries to each Appellant as a result of the denial of their benefits, such as subsistence on General Assistance and food stamps, lack of medical insurance, and homelessness.

Appellants sought (1) declaratory relief that the State and Federal Defendants' "policies, practices, and procedures" in evaluating SSDI/SSI applications violate state and federal law and the regulations, and (2) injunctive relief requiring the State and Federal Defendants to apply policies and procedures in accordance with applicable law. We note with interest that six of the seven Appellants have succeeded since the filing of this lawsuit in obtaining benefits through the process of administrative review.

## DISCUSSION

### A.

### Federal Defendants

Appellants appeal the district court's order finding that it did not have jurisdiction over Appellants' claims against the Federal Defendants based on § 405(g) and 28 U.S.C. § 1361 (mandamus).[2]

---

**1.** 42 U.S.C. § 1383(c)(3) (Title XVI) expressly incorporates the judicial review provisions of § 405(g) (Title II). Accordingly, § 405(g) applies to judicial review under both Title II and Title XVI. *See, e.g., Briggs v. Sullivan,* 886 F.2d 1132, 1138 (9th Cir.1989).

**2.** Appellants do not appeal the district court's finding that it lacked jurisdiction under 28

### 1. Standard of Review

■ We review de novo a dismissal for lack of subject matter jurisdiction, including a dismissal for failure to exhaust administrative remedies and denial of mandamus. *Sommatino v. United States,* 255 F.3d 704, 707 (9th Cir.2001); *Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1302–03 (9th Cir.1992) (exhaustion of administrative remedies); *R.T. Vanderbilt Co. v. Babbitt,* 113 F.3d 1061, 1065 (9th Cir.1997) (mandamus).

### 2. Exhaustion of Administrative Remedies

■ Section 405(g) provides that an individual who has been denied SSDI/SSI benefits may seek judicial review of "any final decision" of the Commissioner. A final decision has two elements: (1) presentment of the claim to the Commissioner, and (2) complete exhaustion of administrative remedies. *Johnson v. Shalala,* 2 F.3d 918, 921 (9th Cir.1993). The parties do not dispute that Appellants met the presentment requirement, but did not exhaust their administrative remedies. Appellants assert that the district court should have waived exhaustion.

■ Following *City of New York,* 476 U.S. 467, 106 S.Ct. 2022, 90 L.Ed.2d 462, we adopted a three-part test for determining whether a particular case merits judicial waiver of § 405(g)'s exhaustion requirement. *Johnson,* 2 F.3d at 921. "The claim must be (1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." *Id.* (citing *Briggs,* 886 F.2d at 1139). We conclude that waiver of § 405(g)'s exhaustion requirement is not appropriate in this case because Appellants' claims are not

collateral to their claims for benefits, and because the purposes of exhaustion would not be served by waiver. *See also Heckler v. Ringer,* 466 U.S. 602, 614, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (where the claims for benefits are "inextricably intertwined" with the Secretary's procedures, administrative exhaustion pursuant to § 405(g) must be respected).

### Collaterality

In *City of New York,* the plaintiffs challenged a secret policy of the SSA mandating a presumption that certain mentally disabled applicants were qualified to do unskilled work, which effectively eliminated the last two steps in the five-step disability evaluation. 476 U.S. at 473–74, 106 S.Ct. 2022. The Supreme Court held that "[t]he claims ... are collateral to the claims for benefits that class members had presented administratively. The class members neither sought nor were awarded benefits in the District Court, but rather challenged the Secretary's failure to follow the applicable regulations." *Id.* at 483, 106 S.Ct. 2022.

In *Johnson,* the plaintiffs challenged the Health and Human Services Secretary's ("Secretary") policy of treating in-kind loans as income. 2 F.3d at 920. We found the claim collateral because it was "not essentially a claim for benefits." *Id.* at 921. Moreover, we explained with regards to readjudication of claims that were denied under the in-kind loans policy:

> Some claimants will receive benefits they were once denied. For others, the readjudication will make no difference. They would not be entitled to benefits under either policy: 'Thus, the plaintiff's attack is essentially to the policy itself, not to its application to them, nor to the ultimate substantive determination of

U.S.C. § 1331 (federal question jurisdiction).

their benefits. Their challenge to the policy rises and falls on its own, separate from the merits of their claim for benefits.'

*Id.* at 921–922 (citation omitted); *see also Briggs*, 886 F.2d at 1139–40 (finding plaintiffs' claim collateral where plaintiffs challenged the Secretary's policy of withholding SSI beneficiaries' payments during the time in which the beneficiaries were without representatives); *Schoolcraft v. Sullivan*, 971 F.2d 81, 85–86 (8th Cir.1992) (finding plaintiffs' claim collateral where plaintiffs challenged the Secretary's failure to ensure that uniform standards were applied at all levels of administrative review); *cf. Crayton v. Callahan*, 120 F.3d 1217, 1221 (11th Cir.1997) (requiring collaterality, irreparability, futility, and that the only issue contested must be constitutional before allowing judicial waiver of § 405(g)'s exhaustion requirement).

After a thorough reading of Appellants' Complaint, we conclude that the district court correctly found Appellants' claims not collateral to their claims for benefits. Appellants use terms such as "policy," "practice," and "systematic," throughout their Complaint, which they argue brings this case within the ambit of *City of New York* and *Johnson.* Although the Complaint artfully uses these terms, all that is alleged is a series of claimed irregularities in individual cases that is entirely dependant on the Appellants' underlying claims for benefits and the proceedings before the State Defendants in making the initial disability determination. An aggregation of individual errors without more does not meet the collaterality requirement as articulated in *City of New York* and *Johnson.*

In *City of New York* and *Johnson*, the plaintiffs challenged specific state policies that conflicted with established law. Appellants admit in their brief that they cannot point to any specific policy, directive, or order requiring the State Defendants to disregard the regulations, and that is what is lacking in this case: a policy. Instead, Appellants ask us to divine a policy from alleged irregularities in seven cases although at the time of oral argument, six of the seven class representatives had been awarded benefits through administrative review. Appellants' arguments are not persuasive; it is difficult at best to infer an adverse policy in this context from circumstances involving six *successful* Appellants, and we do not think it appropriate to "take a leap of faith" to find a specific policy to disregard the regulations from these individual errors. Without a specific policy, and with only allegations of idiosyncratic individual errors, whether the State Defendants committed the alleged errors must be determined in the context of each individual Appellant's proceedings before the state agency, and thus the Appellants' claims are inextricably intertwined with their claims for benefits.

**Irreparability**

A colorable claim of irreparable harm is one that is not "wholly insubstantial, immaterial, or frivolous." *Johnson*, 2 F.3d at 922 (citation and internal quotation marks omitted). Accordingly, economic hardship constitutes irreparable harm: back payments cannot "erase either the experience or the entire effect of several months without food, shelter or other necessities." *Briggs*, 886 F.2d at 1140; *see also Johnson*, 2 F.3d at 922 (holding that the economic hardship of plaintiffs who received reduced SSI benefits was sufficient to meet the requirement of irreparability). Here, Appellants adequately allege economic hardship, such as subsistence on General Assistance and food stamps, lack of medical insurance, and homelessness.

**Futility**

"In most cases, the exhaustion requirement allows the agency to compile a de-

tailed factual record and apply agency expertise in administering its own regulations. The requirement also conserves judicial resources. The agency will correct its own errors through administrative review." *Johnson,* 2 F.3d at 922–23. "However, when the agency applies a 'systemwide policy' that is 'inconsistent in critically important ways with established regulations,' nothing is gained 'from permitting the compilation of a detailed factual record, or from agency expertise.'" *Id.* (quoting *City of New York,* 476 U.S. at 485, 106 S.Ct. 2022); *see also Briggs,* 886 F.2d at 1140–41 (finding futility where this Court could not see "what sort of a detailed record might assist a court in determining the merits of appellants' straightforward statutory and constitutional challenge").

Here, Appellants claim the State Defendants committed a host of individual errors in their cases by disregarding the regulations. Because these errors require interpretation of the regulations and vary with each Appellant, the errors must be determined in the context of individual disability proceedings and require development of individual factual records. In addition, the State and Federal Defendants could apply their agency expertise in determining whether and what regulations were disregarded in each case, and whether there is a more widespread problem they need to address. Thus, administrative review could fix the alleged errors and the purposes of exhaustion would not be served by waiver, as demonstrated by the eventual success of six of these Appellants.

We recognize that Appellants do not seek an award of benefits in this litigation, and that to this extent their claims may appear on the surface to be collateral to the claims for benefits that they presented administratively. However, Appellants' focus is on individual irregularities that allegedly had the effect of denying each of them benefits. Thus, even if we were to hold that the relief sought does put their claims on a different track from the determination of benefits, the purposes of exhaustion would still be clearly served by requiring it here. The tail cannot be allowed indiscriminately to wag the dog. In fact, *City of New York* warns against a waiver of exhaustion in such circumstances: "Thus, our holding today does not suggest that exhaustion is to be excused whenever a claimant alleges an irregularity in the agency proceedings." 476 U.S. at 485, 106 S.Ct. 2022.

### 3. Mandamus

■ Title 28 U.S.C. section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." This Court has held that § 1361 is an appropriate basis for jurisdiction in an action challenging procedures used in administering social security benefits. *Johnson,* 2 F.3d at 924–25 (finding that mandamus will lie against the Secretary if the Secretary owes plaintiffs a clear, non-discretionary duty); *Lopez v. Heckler,* 725 F.2d 1489, 1507–08 (9th Cir. 1984), *vacated and remanded on other grounds, Heckler v. Lopez,* 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984). "Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Patel v. Reno,* 134 F.3d 929, 931 (9th Cir.1998); *see also Ringer,* 466 U.S. at 616, 104 S.Ct. 2013 ("The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he

has exhausted all other avenues of relief...").

■ We hold that Appellants do not meet the third requirement because administrative review could correct the individual errors alleged by Appellants. Thus, there is an adequate alternative remedy.

### B.

### State Defendants

Appellants appeal the district court's order granting the State Defendants' motion to dismiss for failure to state a claim, finding that Appellants did not state a claim under § 1983 based on violations of procedural due process.[3]

#### 1. Standard of Review

■ We review de novo a dismissal of a § 1983 action for failure to state a claim. *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir.2000).

#### 2. Section 1983

■ Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

Section 1983 may be used to challenge violations of federal statutory law. *Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). To state a claim for relief under § 1983, Appellants must demonstrate that the State Defendants (1) were acting under color of state law, and (2) deprived Appellants of a right, privi-

lege, or immunity secured by the Constitution or laws of the United States. *Tongol v. Usery*, 601 F.2d 1091, 1097 (9th Cir. 1979). The Supreme Court has recognized that § 1983 may not be used to challenge violations of federal statutes when (1) the federal statute does not create enforceable rights within the meaning of § 1983 or (2) Congress has foreclosed § 1983 enforcement of the statute in the statute itself. *Suter v. Artist M.*, 503 U.S. 347, 355–56, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992).

■ Although we have doubts that the State Defendants acted under color of state law, assuming they did act under color of state law, Appellants failed to allege a deprivation of procedural due process. Procedural due process claims require (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections. *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir.2001). Appellants have a constitutionally protected property interest in receiving disability benefits. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir.1990) (holding that for purposes of procedural due process, an applicant for social security benefits who cannot work because of a disability has a "significant property interest in receiving disability benefits").

Appellants, however, have not made a showing that they were denied adequate procedural protections. A procedural due process violation under § 1983 is not complete "when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 125–26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *see also Raditch v. United States*, 929 F.2d 478, 480 (9th Cir.1991) (holding that the plaintiff received all the process he was due where the deprivation of process occurred because of an unauthorized act of a govern-

---

**3.** Appellants listed as an issue for appeal whether the district court erred in finding that Appellants failed to state a violation of their rights to equal protection, but never addressed the issue in either their opening or reply brief. Because issues referred to in an appellant's statement of the case but not dis-

cussed in the body of the opening brief are deemed waived for failure to adequately brief on appeal, we do not address the district court's equal protection finding. Fed. R.App. P. 28(a)(9)(A); *Martinez–Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir.1996).

ment official in violation of the Office of Workers' Compensation Programs procedures, and adequate post-deprivation remedies for the violation existed). Appellants have not been deprived of procedural due process until they have exhausted their administrative remedies, because only then can we determine whether Appellants were deprived of adequate process.

Because we find that Appellants did not allege a deprivation of procedural due process, we need not decide whether the the Act's scheme of administrative and judicial review forecloses a remedy under § 1983.

## CONCLUSION

We AFFIRM because (1) Appellants did not exhaust their administrative remedies, (2) mandamus is not available in this case, and (3) Appellants did not state a claim under 42 U.S.C. § 1983.

**AFFIRMED.**